Humphreys, J.,
concurring.
I join entirely in the analysis and judgment of my colleagues in affirming the judgment of the circuit court in this case and write separately only to express my view that our Supreme Court’s opinion in Starrs v. Commonwealth, 287 Va. 1, 752 S.E.2d 812 (2014), has been interpreted by some circuit judges and many practitioners more broadly than that Court likely intended.
It is axiomatic that the primary mission of the courts of the Commonwealth is to render judgments according to law. The substantive law dictating what those judgments ought to be, assuming the appropriate burden of proof has been met, comes from only five sources: the Constitution of the United States, the Constitution of the Commonwealth of Virginia, the statutes adopted by the Congress of the United States and applicable to the Commonwealth under the Supremacy Clause of Article VI, Section 2 of the Constitution of the United States, the statutes adopted by the General Assembly of Virginia, and the common law.
“Adopted over a decade before [the similar provision found in] the United States Constitution, the 1776 Virginia Declaration of Rights provided that ‘the legislative and executive powers of the State should be separate and distinct from the judiciary.’ ” Taylor v. Commonwealth, 58 Va.App. 435, 439, 710 *616 S.E.2d 518, 520 (2011) (quoting Va. Decl. of Rights § 5 (1776); see also Va. Const. ¶ 2 (1776)). “Th[at] original principle”— though suffering erosion in other jurisdictions—endures in the Commonwealth, “ensuring that the legislative, executive, and judicial branches of government ‘shall be separate and distinct’ and that no one branch could ‘exercise the powers properly belonging to the others.’ ” Taylor, 58 Va.App. at 439, 710 S.E.2d at 520 (quoting Va. Const. art. III § 1 (1971)).[8]
The separate and independent status of the judiciary in the Commonwealth’s tripartite system of government implies certain inherent powers “incident to the exercise of judicial power” vested in the courts. 2 A. E. Dick Howard, Commentaries on the Constitution of Virginia 718-20 (1974) (citation omitted). Such powers include, for example, the “authority to discipline attorneys,” In re Moseley, 273 Va. 688, 697, 643 S.E.2d 190, 195 (2007), the power of summary contempt, Robinson v. Commonwealth, 41 Va.App. 137, 145, 583 S.E.2d 60, 64 (2003), and the power to continue a case for a lawful disposition at a later date, Hernandez v. Commonwealth, 281 Va. 222, 226, 707 S.E.2d 273, 275 (2011); Moreau v. Fuller, 276 Va. 127, 137, 661 S.E.2d 841, 846-47 (2008).
Taylor, 58 Va.App. at 439-40, 710 S.E.2d at 520.
In Starrs, 287 Va. at 13, 752 S.E.2d at 819 (emphasis added), the Supreme Court of Virginia concluded that a “circuit court, upon accepting and entering [a defendant’s] guilty plea[ ] in a written order, still retained the inherent authority to withhold a finding of guilt, to defer the disposition, and to consider an outcome other than a felony conviction.” Many, including *617 White, have concluded from the emphasized language that circuit courts have the “inherent authority” to ignore the law when they do so. I do not read Starrs so broadly.
As stated, courts have a duty to render judgments consistent with the rule of law and the evidence presented. That duty cannot always be enforced in an appellate court but it nevertheless endures. Juries can render verdicts that seem inconsistent with the weight of the evidence and courts are generally not permitted to second guess such a verdict. See, e.g., Reed v. Commonwealth, 239 Va. 594, 391 S.E.2d 75 (1990) (upholding “inconsistent” verdict where the jury found the defendant not guilty of robbery but guilty of using a firearm in the commission of robbery). Likewise, courts, under the guise of “inherent authority” to do so, sometimes ignore the clear letter of the law and the evidence, often at the joint urging of the parties in a plea agreement. Such is the case when the prosecutor, a part of the executive branch of government, and the defendant collude with part of the judicial branch to circumvent a judgment based upon a policy established by the people’s representatives in the legislative branch with which they disagree. Sometimes this is done unilaterally by the trial court over the objection of the prosecutor. In either event, the Commonwealth’s appellate courts usually do nothing to rectify the situation and it falls to the voters to reconsider their representation by prosecutors who circumvent the law and to the General Assembly to reevaluate the continuance in office of those judges who do so. However, any failure by the appellate courts of the Commonwealth to take corrective action in these situations is not due to our recognition of any “inherent authority” on the part of a lower court to arbitrarily depart from the rule of law. The opposite is true. Any such failure on our part to do so is entirely due to the fact that the rule of law equally governs our actions and limits our “inherent authority.” If a judgment inconsistent with the law and the evidence has not been appealed—either because the parties and the trial court were complicit in ignoring the plain meaning of the law, or because the judgment benefited a criminal defendant and the Commonwealth lacked the constitutional *618 and statutory authority to appeal the trial court’s decision no matter how erroneous—there is no authority, “inherent” or otherwise, for either this Court or our Supreme Court to take any corrective action sua sponte.
Of course, courts have the clear authority to continue cases for any reasonable length of time, consistent with the speedy trial rights of a defendant, or delay rendering a judgment for a reasonable amount of time for any number of perfectly legitimate reasons. It is also certainly true that a court may properly set aside a verdict or reduce a conviction already rendered to a lesser included offense based upon an error of law or upon the basis of newly discovered evidence. Each of these examples infers the presumption of regularity on the part of the trial court in doing so and, in the absence of clear evidence to the contrary, appellate courts presume a valid legal basis for the trial court’s action. However, the fact that legitimate reasons exist for a continuance or a delay in rendering or altering a judgment does not mean that every reason is legitimate, and our judicial oath to support the constitutions and laws of the United States and the Commonwealth ought to suggest that any reason not supported by the law and the evidence is illegitimate and outside our “inherent” authority as judges.
White stated during oral argument that the language of our Supreme Court in Starrs would allow a circuit court to simply ignore any statute with which the court might have a personal policy objection, including the authority to set aside a jury verdict based solely on a disagreement with the harshness of the penalty required to be imposed by statute as a form of judicial clemency. Like my colleagues, I disagree with White on this point.
Indeed, when an appeal has been properly perfected to an appellate court and where the presumption of regularity has clearly been rebutted, I find no support in the language of Starrs that there is inherent authority or discretion to simply ignore the rule of law.
*619 While a guilty plea is “a self-supplied conviction,” Kibert [v. Commonwealth], 216 Va. [660,] 664, 222 S.E.2d [790,] 793 [ (1976) ] (internal quotation marks omitted), it is only when a trial court has entered “a written order finding the defendant guilty,” Hernandez, 281 Va. at 226, 707 S.E.2d at 275, that it has made a “determination of the rights of the parties upon [a] matter[ ] submitted to it in a proceeding.” In re Commonwealth’s Attorney [for the City of Roanoke], 265 Va. [313,] 319, 576 S.E.2d [458,] 462 [ (2003) ]. Until the court enters such an order, it “has the inherent authority to take the matter under advisement or to continue the case for disposition at a later date.” Hernandez, 281 Va. at 226, 707 S.E.2d at 275. Once a trial court enters a formal adjudication of guilt, it must impose the punishment prescribed by the legislature; it has no inherent authority to depart from that range of punishment. Id. at 225, 707 S.E.2d at 275; see also Moreau, 276 Va. at 136, 661 S.E.2d at 846 (“[T]he judiciary may not assume the function of statutory enactment, a power unique to the legislative function.”); In re Commonwealth of Virginia, 229 Va. 159, 163, 326 S.E.2d 695, 698 (1985) (issuing writ of mandamus to compel a trial court to impose a mandatory sentence because the court had no authority to refuse to do so).
Starrs, 287 Va. at 12-13, 752 S.E.2d at 819.
As we noted in Taylor,
nothing in the separation-of-powers doctrine suggests a court has the inherent power to [arbitrarily] acquit a defendant of a crime that the evidence proved beyond a reasonable doubt she committed. To be sure, just the opposite is true. The assertion of a power to acquit the guilty rests upon the fallacy “that the power to enforce begets inherently a discretion to permanently refuse to do so.”
58 Va.App. at 440, 710 S.E.2d at 520 (quoting Ex parte United States, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916)).
Since White knowingly and voluntarily pleaded guilty, declined to withdraw his guilty plea or provide any legal or factual reason to set it aside, and further because the interpre *620 tation of the language in Starrs urged on this Court by White in this case would very clearly violate the separation of powers doctrine found in Article III, § 1 of the Constitution of Virginia, I join my colleagues in concluding that the inherent authority of the circuit court does not include the discretion to simply ignore the rule of law and set aside a guilty plea, voluntarily entered into and not withdrawn, and enter a judgment of acquittal when the record reflects no evidentiary or legal reason to do so.

. Although the concept of separation of governmental powers originated in Virginia’s post-colonial government and first appears as § 5 of the Virginia Declaration of Rights of 1776, it has continued in every Virginia Constitution since then. See VA. CONST, of 1830 art. I, § 5 & art. II; VA. CONST, of 1851 art. I, § 5 & art. II; VA. CONST, of 1864 art. I, § 5 & art. II; VA. CONST, of 1870 art. I, § 7 & art. II; and VA. CONST, of 1902 §§ 5 & 39. This bedrock principle is so important and fundamental to the governing philosophy of the Commonwealth that it appears twice in our current Constitution in both Article I, § 5 and Article III, § 1 of the Virginia Constitution of 1971.