PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Russell, S.J.

IN RE: JONATHAN A. MOSELEY

OPINION BY
JUSTICE G. STEVEN AGEE

Record Number 061237

April 20, 2007

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

Jonathan A. Moseley appeals the judgment of the Circuit Court of Arlington County, which revoked his "right to practice before the Circuit Court of Arlington." Moseley contends the circuit court erred for two reasons: First, he argues the court "was without jurisdiction" to revoke his right to practice. Second, he asserts that even if the circuit court had jurisdiction to act, it failed to provide him "notice of the alleged misconduct" before the revocation. For the reasons set forth below, we will affirm the judgment of the circuit court.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

This case arises from the proceedings in two breach of contract cases filed by Moseley on behalf of his client, Tracy E. Ammons, against The Christian Coalition of America, Inc. ("the Christian Coalition"). In the first suit, both parties denied having a copy of the consulting agreement in controversy, so the circuit court conducted an evidentiary hearing to determine the nature of the agreement. A primary issue before the court was whether the agreement contained an arbitration

clause, as the Christian Coalition contended, but which Ammons denied. On cross-examination during the hearing, Ammons testified he had found a copy of the consulting agreement, and that he had given a copy to his attorney, Moseley, who had it in the courtroom. Ammons further admitted that the agreement contained an arbitration clause.

Moseley, acting on behalf of Ammons, immediately requested a nonsuit. The circuit court stated it was compelled to grant the nonsuit, and then strongly reprimanded Moseley for his conduct during the course of the proceedings. In particular, the circuit court cited Moseley's failure to inform the court and opposing counsel that the contract had been located and contained the very arbitration provision he had previously denied existed. Furthermore, the circuit court cited Moseley's prior filing of numerous frivolous pleadings and motions in the matter, which needlessly wasted the time of the court and counsel. The circuit court then awarded sanctions against Moseley and Ammons, jointly and severally, in the amount of $83,141.24, which represented a portion of the Christian Coalition's attorney's fees and costs related to Moseley's actions ("the monetary sanctions award").[1]

---

[1] Moseley filed a timely notice and petition of appeal from this order. However, on March 15, 2005, this Court dismissed the petition for appeal under Rule 5:11 for failure to timely file a transcript or written statement of facts. The monetary

2

Ammons and the Christian Coalition then entered into arbitration proceedings concerning the Christian Coalition's alleged breach of the consulting agreement. While the arbitration was ongoing, Moseley filed a second motion for judgment on Ammons' behalf, alleging substantially the same claims against the Christian Coalition as in the first motion for judgment.[2] The Christian Coalition filed a motion to disqualify Moseley from representing Ammons, asserting Moseley had an "irreconcilable and unwaiveable per se conflict" because his "personal interest inextricably [is] intertwined [and] adverse to his own client."[3]

On February 16, 2006, the circuit court heard argument regarding the motion to disqualify Moseley from representing Ammons regarding the second motion for judgment.[4] Despite being

sanctions award against Moseley and Ammons is not before the Court in this appeal.

[2] The second motion for judgment attached a copy of the consulting agreement and contended the Christian Coalition waived its right to rely on the arbitration provisions by defending the prior motion for judgment.

[3] Among the factors the Christian Coalition cited in its motion to disqualify were: Moseley and Ammons' joint and several liability for the monetary sanctions award, Moseley's subsequent declaration of bankruptcy that would insulate him from collection of the monetary sanctions award, Moseley's failure to perfect an appeal of the monetary sanctions award, and Moseley's potential testimony in the pending case regarding the contract's arbitration clause.

[4] Judge Joanne F. Alper was the presiding judge in the proceedings related to the first motion for judgment, and entered the monetary sanctions award. However, Judge Alper "voluntarily recused herself for the limited purpose of hearing

3

sent a copy of the praecipe setting the hearing for that date, Moseley did not appear at the hearing due to an apparent miscommunication from the clerk's office and the judge's chambers, which led Moseley to believe no hearing would occur that day.  However, the hearing did proceed as scheduled on February 16th and the Christian Coalition argued its motion to disqualify Moseley from the second motion for judgment proceeding and it urged the court to consider additional sanctions, including issuing a rule to show cause based on Moseley's conduct.  In addition, the Christian Coalition called David R. Rosenfeld to testify as an expert in the field of legal ethics in Virgina.  Rosenfeld testified that Moseley had a conflict of interest with Ammons and that Moseley's "conduct falls well below the [ethical and professional] standard of care" for attorneys licensed to practice law in Virginia. Rosenfeld also testified that he examined a letter written by and a motion filed by Moseley, and they contained "entirely inappropriate, inaccurate, and in some instances, just downright . . . false" allegations about Judge Alper.[5]

---

from Defendant's Motion to Disqualify."  Judge Benjamin N.A. Kendrick presided over the remaining proceedings relevant to this appeal, including the February 16, 2006 and March 16, 2006 hearings.

[5] Moseley's letter and motion, which the Christian Coalition introduced into evidence at the hearing, indicated that Judge Alper decided to recuse herself from hearing the motion to disqualify him from representing Ammons because she had engaged

4

As a result of the hearing, the circuit court entered an order on February 27, 2006 that granted the Christian Coalition's motion to disqualify Moseley and further directing Moseley "to appear before this Court on the 16[th] day of March 2006 to show cause why Moseley's right to practice before this Court should not be revoked."

As directed by the circuit court, Moseley received a copy of the February 27 order and a transcript of the February 16 hearing. Moseley petitioned the circuit court for a rehearing regarding the February 27 order, and explained the reason for his absence from the February 16 hearing. In light of Moseley's explanation, the circuit court "vacated [the February 27 order] pending the outcome of the March 16, 2006 hearing."

Prior to the March 16 hearing, the Christian Coalition alerted the circuit court that it had just obtained an e-mail written and circulated by Moseley, which the Christian Coalition asked be considered at the March 16 hearing. Moseley was sent a copy of both the Christian Coalition's letter to the circuit court and the e-mail. In the e-mail, Moseley characterized opposing counsel as "certainly demonically empowered. I have never seen anyone who reeks of evil so much." Furthermore, Moseley described the monetary sanctions award entered by Judge

---

in "misconduct" during the first motion for judgment proceedings.

5

Alper as "an absurd decision from a whacko judge, whom I believe was bribed."

At the March 16 hearing, which included the Rule to Show Cause, the circuit court directed the Christian Coalition to reargue its motion to disqualify Moseley. In its opening statement, the Christian Coalition argued "the evidence is overwhelming that [Moseley] should not only be disqualified [from representing Ammons], but within this judicial district [have his right to practice] suspend[ed] or revoke[d]," and have his conduct reported to the State Bar for further investigation. The presiding judge then reiterated that those would be the three issues before the court during the hearing.

The Christian Coalition again called David Ross Rosenfeld as an expert witness, and he gave substantially the same testimony as in the February 16 hearing. When asked about Moseley's recent e-mail, Rosenfeld testified that in his expert opinion, "the characterization of a sitting judge as a wacko judge constitutes a per se violation of the standard of care established through Rule 8.2" of the Rules of Professional Conduct in Virginia.

During the hearing, Moseley repeatedly contended that he had not been given notice that the court was considering the revocation of his privilege to practice before it. The circuit court rejected Moseley's argument, finding that Moseley had been

given adequate notice of the issue in the motion to disqualify, the transcripts of the February 16 hearing, the specific terms of the February 27 order, particularly the rule to show cause, and the enunciation by counsel and the court of the issues before it at the hearing.

The circuit court then entered an order dated March 16, 2006, finding that Moseley had "an irreconcilable [and unwaiveable] conflict of interest" and ordered that he "immediately terminate his representation" of Ammons.  The court also made a specific finding that Moseley "had timely, adequate, and proper notice of this proceeding" and that it had "the inherent power to suspend or annul the license of an attorney practicing before it.  § 54.1-3915, Code of Virginia [and] Legal Club of Lynchburg v. Light, 137 Va. 249[, 119 S.E. 55] (1923)." The order then recited that "Moseley's conduct during . . . this cause . . . raises sufficient and serious questions for this Court regarding [his] competency and fitness to practice law before this Court" and found Moseley had "engaged in unethical conduct in violation of the Virginia Code of Professional Conduct and . . . made contemptible, irresponsible and false statements about a sitting judge."  The March 16, 2006 order then provided that "Moseley's right to practice before the Circuit Court of Arlington . . . be and hereby is revoked" and

referred to the Virginia State Board and this Court

"consideration of reciprocal revocation of licensure."

On appeal to this Court, Moseley makes two assignments of error. First, he contends the circuit court erred because it "was without jurisdiction" to revoke his entitlement to practice law before the Circuit Court of Arlington County. Second, Moseley asserts the circuit court failed to properly provide him "notice of the alleged misconduct" prior to taking such action. We address each assignment of error in turn.

### A.  Jurisdiction of the Circuit Court

Moseley contends the Circuit Court of Arlington County did not have jurisdiction to revoke his entitlement to practice before it because the "whole field of disbarment in Virginia" is now regulated by statute. He argues that because the circuit court did not follow the procedure for disbarment set forth in

_____

[6] Moseley's disqualification from representing Ammons and the referral to the Virginia State Bar are not before this Court on appeal.  The underlying dispute between Ammons and the Christian Coalition has subsequently settled.  Consequently, we granted Moseley's motion to dismiss the Christian Coalition as appellee in the matter and the appeal was re-styled In re Moseley.  The Court designated counsel to argue as amicus curiae in support of the circuit court's actions.

8

Code § 54.1-3935, it was without authority to act so as to bar his practice before that court. Moseley distinguishes the circuit court's authority "to remove counsel in a particular case or to punish for contempt," and the type of action here, which removes his ability to appear before the court.

At the outset, it is important to note that Moseley's license to practice law in Virginia was not affected by the March 16, 2006 order. Licensure of an attorney, and revocation of that license, are matters governed by statute. Code §§ 54.1-3928, -3934 et seq. It is not within the jurisdiction of a circuit court to adjudicate the revocation of a license to practice law except in compliance with the statutory authority. Code § 54.1-3935.[7] The circuit court clearly recognized that limitation because it referred any action regarding Moseley's license to practice law to the Virginia State Bar. A license to practice law covers the full panoply of actions an attorney can undertake from writing a will to representing a person in a controversy before a court. And while the issuance of a license to practice law carries with it certain rights for the holder of that license, the ability to practice before a particular court is a distinct and separate consideration.

---

[7] Even before the unification of the various bars within the Commonwealth and creation of the Virginia State Bar in 1938, revocation of a license to practice law was a matter governed by statute. Ex Parte Fisher, 33 Va. (6 Leigh) 619, 624-25 (1835).

9

The matter before the Court on appeal, however, is not the status of Moseley's license to practice law, but whether a court can revoke his privilege to practice before a particular court when no statute specifically provides for that action. The answer to that query is answered by our long-standing jurisprudence.

We addressed the basic issue now before us in 1835 in Ex Parte Fisher, 33 Va. (6 Leigh) 619, 624-25 (1835). Our resolution of the issue then remains as valid today as it was nearly two centuries ago. "[I]ndependently of any statutory restriction, the courts of record of this [C]ommonwealth might, in a proper case, suspend or annul the license of an attorney, so far as it authorized him to practice in the particular court, which pronounced the sentence, but no farther." Id. at 624.

Although the local circuit courts had jurisdiction in the 19th century both to issue a license to practice law and control the actual practice before that court, the intervening statutory regimen ceding licensure to the Virginia State Bar (as opposed to the various circuit courts) has no effect on the continuing authority of a court to regulate the privilege of practicing before that court. We explained this concept in Legal Club of Lynchburg:

> Independent of statutory authority, all courts of record in Virginia have inherent power in a proper case to suspend or annul the license of an attorney

10

practicing in the particular court which pronounces the sentence of disbarment.

137 Va. at 250, 119 S.E. at 55.  This independent and inherent power to regulate the lawyers practicing before it is vested in courts as part of the authority necessary to the existence and function of a court.  See, e.g., Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962).

In Code § 54.1-3935, on which Moseley relies, the General Assembly has set forth the procedure by which the appropriate court is empowered to revoke or suspend a license to practice law that affects the right to practice law throughout the Commonwealth.[8]  However, as recognized in Legal Club, this statutory authority does not curtail a court's pre-existing and

---

[8] Subsection (A) of Code § 54.1-3935 states:
> If the Supreme Court, the Court of Appeals, or any circuit court of this Commonwealth observes, or if a complaint, verified by affidavit is made by any person to such court, that any attorney has been convicted of a misdemeanor involving moral turpitude or a felony or has violated the Virginia Code of Professional Responsibility, the court may assign the matter to the Virginia State Bar for investigation. Upon receipt of the report of the Virginia State Bar, the court may issue a rule against such attorney to show cause why his license to practice law shall not be revoked. If the complaint, verified by affidavit, is made by a district committee of the Virginia State Bar, the court shall issue a rule against the attorney to show cause why his license to practice law shall not be revoked.

The remaining subsections set forth how the case will proceed and the attorney's rights during the proceedings.  Subsection (D) specifically authorizes the court to, inter alia, revoke or suspend an attorney's "license to practice law in this Commonwealth" if the attorney is found guilty by the court.

independent authority to control those who practice before it, including the authority to suspend or revoke an attorney's privilege to practice before that court. 137 Va. at 250-51, 119 S.E. at 55. "Such power does not depend for its existence upon either constitutional or statutory provisions, but is possessed by all courts of record, unless taken away by express constitutional (or possibly legislative) inhibition." Id. at 251, 119 S.E. at 55.

Although Legal Club seemed to leave open the possibility that a legislative enactment could circumscribe a court's authority to discipline attorneys practicing before it, this Court's decision in Norfolk & Portsmouth Bar Ass'n v. Drewry, 161 Va. 833, 172 S.E. 282 (1934), annuls that possibility. In Drewry we reiterated not only that a court has "an inherent power" to discipline and regulate attorneys practicing before it, but also recognized that "[t]his power, since the judiciary is an independent branch of government, is not controlled by statute." 161 Va. at 836, 172 S.E. at 283. Thus, the court's authority to discipline attorneys and regulate their conduct in proceedings before that court is also a constitutional power derived from the separation of powers between the judiciary, as an independent branch of government, and the other branches. Va. Const. art. III, § 1; art. VI, § 1; see, e.g., Harlen v. Helena, 676 P.2d 191, 193 (Mont. 1984); Hustedt v. Workers'

12

Comp. Appeals Bd., 636 P.2d 1139, 1142-44 (Cal. 1981); R.J. Edwards, Inc. v. Hert, 504 P.2d 407, 411 (Okla. 1972); State ex rel. Oregon State Bar v. Lenske, 407 P.2d 250, 254-56 (Or. 1965); In re Sparks, 101 S.W.2d 194, 196 (Ky. 1936).  As the circuit court implied, this inherent and constitutional power is essentially acknowledged in Code § 54.1-3915, where even this Court is prohibited from promulgating "any rule or regulation or method of procedure which eliminates the jurisdiction of the courts to deal with the discipline of attorneys."

Our more recent cases continue to recognize this inherent and constitutional authority of a court to discipline attorneys apart from the formal statutory disciplinary procedures affecting the attorney's license to practice law.  For example, as recently as March of this year, we summarized our jurisprudence in this area in Nusbaum v. Berlin, 273 Va. 385, 641 S.E.2d 494 (2007):

> [T]his Court has recognized that the courts of this Commonwealth have the inherent power to supervise the conduct of attorneys practicing before them and to discipline any attorney who engages in misconduct.  A court's inherent power to discipline an attorney practicing before it includes the power not only 'to remove an attorney of record in a case,' [Judicial Inquiry and Review Comm'n v. Peatross, 269 Va. 428, 447, 611 S.E.2d 392, 402 (2005)], but also 'in a proper case to suspend or annul the license of an attorney practicing in the particular court.' "

Id. at 399, 641 S.E.2d at 501 (citations omitted).  Thus, the authority of a court to regulate the conduct of attorneys

13

practicing before that court by revoking or suspending that privilege is both an inherent and a constitutional power that is not dependent on its creation by legislative enactment and thus cannot be limited by statute.  Accordingly, under our long-standing precedent, the circuit court had jurisdiction to revoke Moseley's privilege to practice before that court.[9]

The March 16, 2006 order by its plain terms applies only to Moseley's right to practice before the Circuit Court of Arlington County.  By necessity, the circuit court's action is the act of that court and not limited to practice before the individual judge presiding over the case.  See Commonwealth v. Epps, 273 Va. 410, 414, 641 S.E.2d 77, 80 (2007) (In the context of contemptuous behavior in the courtroom, "[a]ny harm in this case was suffered by the court as an institution, not by [the judge] personally.").  By that, we mean the order of March 16, 2006, by its very issuance, is an act binding within the jurisdictional limits of the Circuit Court of Arlington County. Therefore, the Circuit Court of Arlington County, which is coterminous with the 17th judicial circuit, has authority to regulate the conduct of attorneys throughout that circuit, but

---

[9] Moseley raises no issue as to the sufficiency of the evidence to support the circuit court's judgment, nor does he raise an issue as to whether the circuit court abused its discretion, based on the evidence, in revoking his privilege to practice before the court.  Thus, we address neither matter.  Rule 5:17(c).

14

no further.  Indeed, as we recognized in Ex Parte Fisher, Legal Club, and Drewry, a court's authority in the discipline of attorneys practicing before it is limited to the jurisdictional boundaries of that court and cannot extend to other courts beyond that boundary.[10]

For all these reasons, we conclude the circuit court had jurisdiction to revoke Moseley's privilege to appear in that court and thus did not err in the judgment of March 16, 2006.

## B.  Notice of the Alleged Misconduct

Moseley also alleges the circuit court erred in revoking his privilege to practice before the Circuit Court of Arlington County "without notice of the alleged misconduct."  Although Moseley also argues on brief the broader contention that he did not have notice "that his right to practice law was in jeopardy," he made no assignment of error as to that issue.  We thus limit our review to the specific issue to which he assigned error.  Rule 5:17(c); see Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 557, 554 S.E.2d 55, 57 (2001).

---

[10] As noted above, the March 16, 2006 order, in and of itself, does not affect Moseley's license to practice law.  Moseley's license to practice law remains in effect, even within the jurisdictional boundaries of the Circuit Court of Arlington County; he simply cannot appear in that court.  We also note that the March 16, 2006 order, by its specific terms, applies only to the Circuit Court of Arlington County, and does not undertake to revoke Moseley's privilege to practice before the juvenile and domestic relations or general district courts of Arlington County.

15

Moseley's argument that he lacked notice of the alleged misconduct is without merit. Courts are not required to list with specificity their factual basis for issuing a rule to show cause. Moreover, the record clearly shows Moseley received, inter alia, copies of the motion to disqualify, communication from the Christian Coalition to the court stating the intent to raise correspondence written by Moseley (with copies of the referenced correspondence attached), a transcript of the February 16 hearing detailing the evidence on which the Christian Coalition was relying to support Moseley's disqualification, and the issuance of a rule to show cause in the circuit court's February 27 order. Moseley received more than adequate "notice of the alleged misconduct," which was the subject of the March 16 hearing and embodied in the findings of the March 16, 2006 order. Thus, Moseley's second assignment of error also fails.

### III. CONCLUSION

For the reasons set forth above, the circuit court had the jurisdiction to revoke Moseley's privilege to practice before it. Moseley also had adequate notice of the conduct the circuit court would consider in deciding on that revocation. Accordingly, we will affirm the judgment of the circuit court.

Affirmed.