COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and AtLee
Argued at Norfolk, Virginia


STEPHEN KEITH WHITE

v.      Record No. 1150-16-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WILLIAM G. PETTY
MAY 2, 2017


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

Steven D. Barnette for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Stephen Keith White appeals his conviction of making a false statement in connection

with a firearm purchase, in violation of Code § 18.2-308.2:2. White argues that the trial court

erred in concluding that Taylor v. Commonwealth, 58 Va. App. 435, 710 S.E.2d 518 (2011),

precluded the trial court from withholding a finding of guilt and deferring the disposition until a

later date. We disagree and affirm.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party in the circuit court."

Porter v. Commonwealth, 276 Va. 203, 215-16, 661 S.E.2d 415, 419 (2008).

On July 25, 2015, White filled out a firearm transaction form in an attempt to purchase a

firearm. White indicated on the form that he had never been convicted of a crime of domestic

violence. The purchase was denied by the Virginia State Police, and a trooper opened an

investigation based on White's attempt to purchase a firearm. During the investigation, it came

to light that White had in fact previously been convicted of a crime of assault and battery. A trooper interviewed White, and White admitted his conviction was for assault and battery on a family member, a crime of domestic violence. White further admitted to the trooper that he did fill out and sign the form; however, White explained that he did not realize his assault and battery conviction was a domestic violence conviction because his sentencing order only stated misdemeanor assault and battery. He explained that he thought domestic violence was a separate and distinct offense. Nonetheless, White pleaded guilty to making a false statement.

The trial court performed a thorough plea colloquy, and the Commonwealth proffered the evidence it would have presented at trial. The trial court accepted the plea and found that the evidence was sufficient to find White guilty. The trial court, however, deferred entering a conviction until after the preparation of a presentence report and continued the case. That same day, the judge signed the plea agreement and accepted the plea on the record.

White testified on his own behalf at the sentencing hearing. His testimony was consistent with his explanation to the trooper. He explained that he had not known that assault and battery was a crime of domestic violence. White pointed out that he had always responded in the affirmative on employment applications when asked if he had ever been convicted of a crime. He testified that he filled the form out truthfully based on his understanding of the question at the time. On cross-examination, White admitted that the victim of his assault and battery was the mother of his child.

White's counsel argued that his testimony demonstrated an honest mistake and that White lacked devious intent. Counsel admitted that he advised his client that the crime was complete when he put "no" down on the firearm transaction form. He nonetheless argued that if the trial court "look[ed] at the totality of the circumstances here, what was on this man's mind looking at his criminal background . . . I think there's some doubt there . . . ." White's counsel suggested

that there were alternatives that the court could fashion to prevent a felony conviction and asked the court not to "tag this 60-year-old man . . . with a felony at this point in his life."

Recognizing that White was requesting that the offense be reduced to a misdemeanor or dismissed altogether, the trial court denied the request and pronounced White guilty. However, the trial court noted that in this situation it lacked authority to do anything else, stating,

> I will tell you if this was a situation that had, the way I interpret the law, allowed a deferred finding, I would seriously consider one, but I still believe Taylor was not overruled by Starrs and Taylor still applies. I invite you to get a definitive answer with a higher court, but he's entered a plea of guilty, the evidence is sufficient, and I do find him guilty. I would consider that alternative if I felt it was available to me, but my interpretation of the law, its [sic] not available to me.[1]

ANALYSIS

White argues on appeal that the trial court erred in concluding that it "lacked the discretion to continue the withhold finding at the sentencing hearing or otherwise decline to enter a finding of guilty" and that it was compelled to find White guilty under Taylor v. Commonwealth, 58 Va. App. 435, 710 S.E.2d 518 (2011). Whether a trial court has authority to take a case under advisement and defer a finding of guilt is a question of law that we review *de novo* on appeal. Starrs v. Commonwealth, 287 Va. 1, 7, 752 S.E.2d 812, 816 (2014); Moreau v. Fuller, 276 Va. 127, 133, 661 S.E.2d 841, 845 (2008).

A. Procedural Argument

We must first address the Commonwealth's argument that White failed to preserve this issue in the trial court. The Commonwealth contends that White did not argue that his testimony

---

[1] As noted below, both Starrs and Taylor deal with a trial court's authority to defer and ultimately dismiss or reduce a charged offense. Thus, when the trial court referred to a deferred finding we assume that he was referring to an ultimate dismissal or reduction of the charge at a later date.

was offered as evidence of guilt or innocence and he did not distinguish his case from Taylor. Accordingly, the Commonwealth argues that White did not preserve the issue for appeal.

The primary purpose of requiring an argument be made to a trial court is "to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 525 (1992) (quoting Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)).

The Commonwealth is correct that White did not specifically refer to Taylor or attempt to distinguish his case. However, he did argue that there were doubts as to White's state of mind at the time of the act sufficient that the court should make an alternative disposition. The trial court clearly understood White's argument when it told him the court had no authority to make such a deferred finding under Taylor. The trial court cited to the relevant case law and made specific reference to Starrs v. Commonwealth and the court's belief that Starrs did not overrule Taylor. The trial court had the ability to "consider the issue intelligently" and, aware of the possibility of appeal, invited White to get a "definitive answer with a higher court." Once the trial court ruled on the issue, White was not required to argue with the court about its interpretation of Starrs and Taylor. See Code § 8.01-384 ("No party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal, . . . ."). Therefore, we find that White did properly preserve the issue for appeal.

### B. Authority of the Court

"Under the Constitution of Virginia, judicial power is 'vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish.'" Starrs, 287 Va. at 7, 752 S.E.2d at 816 (quoting Va. Const. art. VI, § 1). "The court's inherent power has been recognized to extend to

- 4 -

matters 'incident to the exercise of the judicial power which is vested' in it." Id. at 7-8, 752 S.E.2d at 816 (quoting Moreau, 276 Va. at 136, 661 S.E.2d at 846). "A judgment is the determination by a court of the rights of the parties, as those rights presently exist upon matters submitted to it in an action or proceeding." Id. at 7, 752 S.E.2d at 816 (quoting Rollins v. Bazile, 205 Va. 613, 617, 139 S.E.2d 114, 117 (1964)).

Although the court has the constitutional authority to render judgment, in doing so it may not intrude upon the powers of the other branches of government. For example, a trial court "may not assume a power of clemency or pardon" or "the function of statutory enactment." Moreau, 276 Va. at 136, 661 S.E.2d at 846. This becomes especially relevant when considering a trial court's authority to withhold a finding of guilt and the purpose for which it may withhold such a finding. These issues have been repeatedly litigated in both this Court and the Supreme Court.[2]

A panel of this Court first addressed the issue in Powell v. Commonwealth, 34 Va. App. 13, 537 S.E.2d 602 (2000), withdrawn by 36 Va. App. 231, 548 S.E.2d 926 (2001).[3] In Powell, the trial court took a case under advisement with a promise to dismiss the charges if certain

---

[2] The Supreme Court, however, has repeatedly avoided the question of what future dispositions a trial court is permitted to make after a continuance. See, e.g., Hernandez v. Commonwealth, 281 Va. 222, 225, 707 S.E.2d 273, 274 (2011); Moreau, 276 Va. at 137, 661 S.E.2d at 847.

[3] The Supreme Court addressed a similar issue in In re Commonwealth's Atty. for Chesterfield Cty., 229 Va. 159, 326 S.E.2d 695 (1985). In that case, the Court considered whether the trial court had authority to withhold imposition of a mandatory sentence after convicting the defendant. Id. at 161, 326 S.E.2d at 696. Based on statutory language, the Court determined the trial court did not have authority to withhold imposition of the sentence. Id. at 163, 326 S.E.2d at 698.
The Court of Appeals also mentioned the matter in passing in Holden v. Commonwealth, 26 Va. App. 403, 494 S.E.2d 892 (1998). In Holden, this Court recognized that deferment of judgment or imposition of a sentence may be authorized, but "[g]enerally absent an express statutory grant, trial courts may not dismiss criminal charges on grounds other than the legal or factual merits." Id. at 407, 494 S.E.2d at 894.

conditions were met.  Id.  The trial court refused to dismiss the charges and convicted the defendant.  Id.  Although a court has limited authority to take cases under advisement, this Court held that

> where evidence is sufficient beyond a reasonable doubt to convict, in the absence of specific statutory authority to defer a finding of guilt, a trial court has no authority to defer judgment and further proceedings, with a view toward dismissal of the charge upon meeting certain terms and conditions imposed by the court.

Id.  Ultimately, however, this Court, sitting *en banc*, withdrew the panel opinion and decided the case on different grounds.  Powell v. Commonwealth, 36 Va. App. 231, 548 S.E.2d 926 (2001) (*en banc*).

The issue came before the Court again after a trial court deferred disposition for a year, but subsequently determined it lacked authority to defer further and entered a conviction order. Gibson v. Commonwealth, 50 Va. App. 285, 291, 694 S.E.2d 214, 217 (2007), overruled by Moreau v. Fuller, 276 Va. 127, 661 S.E.2d 841 (2008).  This Court specifically rejected the argument that a trial court has inherent authority to defer disposition and take a case under advisement with the ultimate intent to dismiss.  Id. at 300, 694 S.E.2d at 221.  Such inherent authority would render meaningless the specific statutory grants of authority to defer in certain types of criminal offenses.  Id.  The Supreme Court avoided the issue on appeal and decided the case on different grounds.  Gibson v. Commonwealth, 276 Va. 176, 180-81, 662 S.E.2d 54, 57 (2008).[4]

The Supreme Court finally addressed the issue of a trial court's authority to defer in three different cases.  See Moreau, 276 Va. 127, 661 S.E.2d 841; Hernandez v. Commonwealth,

---

[4] The Supreme Court issued Moreau, 276 Va. 127, 661 S.E.2d 841, on the same day it issued an opinion in Gibson.  In Gibson the Supreme Court decided the case on different grounds than this Court.  However, in Moreau the Supreme Court expressly overruled this Court's opinion in Gibson.  Moreau, 276 Va. at 138 n.5, 661 S.E.2d at 847 n.5.

281 Va. 222, 707 S.E.2d 273 (2011); In re Commonwealth's Atty. for the City of Roanoke, 265 Va. 313, 576 S.E.2d 458 (2003). In all three cases, the Supreme Court based its holding on the essential role of a trial court to render judgment. Although a trial court could not assume the power of clemency or pardon, neither would the Court interfere with the essential function of rendering judgment. Moreau, 276 Va. at 136, 661 S.E.2d at 846.

In Moreau, a juvenile and domestic relations (J&DR) judge issued an order stating that the evidence was sufficient to convict but that it was appropriate to defer entering a judgment of guilty. Id. at 131, 661 S.E.2d at 843. A circuit court issued a writ of mandamus and ordered the J&DR judge to enter judgment. Id. at 132, 661 S.E.2d at 844. The Supreme Court reversed and held that "it was within the inherent authority of the court to 'take the matter under advisement' or 'continue the case for disposition' at a later date. Such practices involve the essence of rendering judgment." Id. at 137, 661 S.E.2d at 846-47. Thus, a finding that the evidence was sufficient to convict was not the same as a conviction order. Id. at 138, 661 S.E.2d at 847.

The Court specifically limited its opinion and noted,

> What may in a proper case be reasonably subject to challenge is whether the judge may decline to render judgment and continue the case with or without terms akin to probation status with the promise from the court of a particular disposition at a later date. However, the case before us does not present such questions.[5]

Id. at 137, 661 S.E.2d at 847 (footnote added).

In Hernandez v. Commonwealth, 55 Va. App. 190, 193-94, 684 S.E.2d 845, 847 (2009), rev'd, 281 Va. 222, 707 S.E.2d 273 (2011), the request to defer came from the defense counsel. Counsel admitted the client was guilty but asked the trial court to use its inherent authority to

---

[5] The contemporaneous records of the J&DR court indicated that the judge promised to dismiss if there were no problems. Moreau, 276 Va. at 132, 661 S.E.2d at 844. However, because the promise was not in the form of an order, the Court refused to consider the issue of future dispositions after a deferral. Id. at 132, 137-38, 661 S.E.2d at 844, 847.

defer a finding of guilt and ultimately dismiss the case if the client complied with every condition the judge may impose on him. Id. Because the issue involved the question of future dispositions, this Court determined it was not governed by Moreau. Id. at 201, 684 S.E.2d at 851. This Court reiterated that "absent an express statutory grant, trial courts may not dismiss criminal charges on grounds other than the legal or factual merits." Id. (emphasis omitted) (quoting Holden, 26 Va. App. at 407, 494 S.E.2d at 895). "Once there is a finding of guilt (or a finding of evidence sufficient to support the same) . . . the consequences of that finding; that is, a permissible punishment a court may impose, are circumscribed and delineated by the legislature." Id. at 202, 684 S.E.2d at 851.

The Supreme Court reversed and found that the question in Hernandez was the same as in Moreau in a slightly different factual circumstance. Hernandez, 281 Va. at 223, 707 S.E.2d at 273. The Supreme Court agreed with this Court that once the trial court has entered a judgment of conviction, the court has "no inherent authority to depart from the range of punishment legislatively prescribed." Id. at 225, 707 S.E.2d at 275. However, it disagreed that a statement saying the "evidence was sufficient to support a conviction amounts to a judgment of conviction." Id. at 225-26, 707 S.E.2d at 275. "Until the court enters a written order finding the defendant guilty of a crime, the court has the inherent authority to take the matter under advisement or to continue the case for disposition at a later date." Id. at 226, 707 S.E.2d 275. Like in Moreau, however, the Supreme Court specifically declined to answer the question of "whether a court may defer judgment and continue a case with a *promise* of a particular disposition at a later date." Id. at 225, 707 S.E.2d 274.

## C. Taylor & Starrs

The trial court here, however, determined that it did not have the authority to defer disposition for the purpose of reducing or dismissing the charge because of the holding in Taylor

v. Commonwealth, 58 Va. App. 435, 710 S.E.2d 518 (2011), appeal refused, Rec. No. 111413 (Va. S. Ct. Nov. 8, 2011). In Taylor, this Court held that a trial court does not have the inherent authority to "acquit a defendant of a crime that the evidence proved beyond a reasonable doubt [he] committed." Id. at 440, 710 S.E.2d at 520. The defendant in Taylor asked the court to find her guilty of a misdemeanor instead of a felony. Id. at 437, 710 S.E.2d at 519. Because "Moreau and Hernandez merely hold a trial court has the discretion to continue a case for a future disposition," neither controlled the outcome in Taylor. Id. at 449, 710 S.E.2d at 525. This Court looked at all possible sources of a court's power—constitutional, common law, statutory, and inherent authority. Noting the separation of powers doctrine, this Court stated that

> a Virginia court cannot refuse to convict a guilty defendant merely because it questions the category of offense assigned by the legislature, considers the range of statutory punishment too harsh, or believes certain guilty offenders undeserving of a criminal conviction. "Judicial nullification" of a constitutionally valid criminal statute "has happily, no place in our system."

Id. at 442, 710 S.E.2d at 521 (quoting Sorrells v. United States, 287 U.S. 435, 450 (1932)). This Court determined that without a common law or constitutional source of power or without an express statutory grant of authority, the trial court did not have authority to acquit the defendant of the crime charged and convict her of a lesser offense. Id. at 450, 710 S.E.2d at 525.

Taylor has never been expressly overruled by the Supreme Court. However, without expressly addressing the holding in Taylor, the Supreme Court raised questions about its continued viability in Starrs v. Commonwealth, 287 Va. 1, 752 S.E.2d 812 (2014). Herein lies the dilemma recognized by the trial court. Because the Supreme Court did not provide clear guidance as to the authority of a trial court to reduce or dismiss a charge despite conceded evidence of guilt, we must cobble together an answer based on a close reading of Starrs and Taylor.

The defendant in Starrs made a request similar to the one made in Taylor. The defendant pleaded guilty and then asked the court to withhold a finding of guilt and to "release him under certain terms and conditions, and at the end of that period to 'consider dismissal of the case in lieu of a conviction.'" Id. at 5, 752 S.E.2d at 815. Defense counsel admitted his "entire purpose" was the hope the trial court "would ultimately dismiss the charges." Id. The trial court determined that it did not have authority to grant the request for a deferral. Id. However, the trial court wanted to be "absolutely clear" about its ruling and explained,

> I have discretion to continue this; I can absolutely continue this for two years.
> But at the end of two years, my only option would be to sentence [Starrs] on the charges in which he entered pleas of guilty. And, as [Starrs] has confirmed, the whole purpose in seeking the deferral is ultimately to obtain a dismissal. . . . And if dismissal is not an option, there's no bona fide reason to defer disposition.

Id. at 6, 752 S.E.2d at 815.

This Court agreed because the trial court may not "in the absence of a statutory grant of authority, . . . defer disposition upon set terms and, upon satisfaction of those terms, later acquit a defendant who was determined to be guilty of the offense." Starrs v. Commonwealth, 61 Va. App. 39, 45, 733 S.E.2d 142, 145 (2012), rev'd, 287 Va. 1, 752 S.E.2d 812 (2014). Because the trial court accepted the guilty plea and entered it in the records, it was the same as a conviction. Id. at 46, 733 S.E.2d at 145.

But the Supreme Court disagreed. The Court concluded that "the circuit court, upon accepting and entering Starrs' guilty pleas in a written order, still retained the inherent authority to withhold a finding of guilt, to defer disposition, and to consider an outcome other than a felony conviction." Starrs, 287 Va. at 13, 752 S.E.2d at 819. "To hold that the circuit court, after accepting and entering Starrs' guilty pleas, had no discretion to do anything other than impose the legislatively prescribed punishment would be tantamount to controlling the 'exercise

- 10 -

of judicial discretion by prescribing the precise judgment to be entered, a judgment of guilt.'" Id. at 13, 752 S.E.2d at 819. The Court was careful to point out that the decision in Starrs "does not traverse the separation of powers" doctrine because the trial court had not yet entered the order adjudicating guilt and, thus, still had discretion. Id. at 14, 752 S.E.2d at 820.

Without referring to Taylor, the Supreme Court stated, "Our precedents make clear that a guilty plea obviates the need for evidence to establish guilt, but a trial court may nevertheless hear evidence and actually convict the accused of a lesser offense." Id. at 11, 752 S.E.2d at 819. The Court also stated that the trial court "still retained the inherent authority to withhold a finding of guilt, to defer the disposition, and to consider an outcome other than a felony conviction." Id. at 13, 752 S.E.2d at 819.[6] This language seems to implicitly overrule the holding in Taylor that a trial court has no inherent authority to acquit a defendant of a crime proved beyond a reasonable doubt and convict of a lesser offense.

However, Starrs is not the end of the discussion. In Harris v. Commonwealth, 63 Va. App. 525, 759 S.E.2d 29 (2014), which was decided after Starrs, we once again attempted to apply the Supreme Court's holding.[7] Harris recognized that Starrs determined how far into trial

---

[6] The Supreme Court made clear the source of that inherent authority.

> [T]he judiciary's inherent power derives from its existence as an institution entrusted with the function of rendering judgment. To deny this function is to deny the very institution itself. The court's inherent power has been recognized to extend to matters "incident to the exercise of the judicial power which is vested" in it.

Starrs, 287 Va. at 7-8, 752 S.E.2d at 816 (citations omitted).

[7] While we are ultimately bound by decisions of the Supreme Court, this Court also recognizes the doctrine of interpanel accord. A holding by one panel of the Court of Appeals of Virginia "bind[s] all other three-judge panels under the interpanel accord doctrine." Startin v. Commonwealth, 56 Va. App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (*en banc*). A decision of one panel protected by the interpanel accord doctrine "cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." Congdon v. Congdon, 40

proceedings a trial court's authority to defer disposition extends—until the conviction order is entered.  Id. at 533, 759 S.E.2d at 33.  But Harris also reasoned that "[t]he Supreme Court of Virginia could not have intended in its Moreau, Hernandez, and Starrs decisions to hold that a trial court somehow possesses the power of *judicial clemency*."  Id. at 535, 759 S.E.2d at 34.  This Court refused to interpret "Starrs to alter the fundamental principle of judicial restraint or the constitutionally required separation of powers . . . ."  Id. at 534, 759 S.E.2d at 33.

Moreau and Hernandez did not answer what future dispositions a court had authority to make after a continuance where the evidence proved beyond a reasonable doubt that the accused was guilty.  Id. at 535, 759 S.E.2d at 34.  And "[t]he Supreme Court's decision in Starrs, which came after Taylor, does not lead to or compel any different conclusion."  Id.  The opinion in Taylor did address what types of future dispositions a court was permitted to make.  In other words, the panel in Harris determined that Starrs did not overrule Taylor.

Rather, this Court interpreted the holding in Starrs as limited.  Id. at 535, 759 S.E.2d at 34.  Harris interpreted Starrs to say that the court may defer and hear additional evidence if the "*purpose* of hearing [additional] evidence is to determine whether an accused *is guilty or not* and the measure of guilt."  Id. (alteration in original) (quoting Starrs, 287 Va. at 11, 752 S.E.2d at 819).

In Harris, this Court stated that

> any authority of a trial court to permit the "'mere postponement' in
> the entry" of a conviction order cannot serve "as a pretext for
> granting a criminal defendant 'a pardon for his crime'" because
> that would be an improper exercise of clemency by the judiciary
> that would definitely exceed the judiciary's authority under the
> separation of powers doctrine.

---

Va. App. 255, 265, 578 S.E.2d 833, 838 (2003).  The decision of the panel in Harris has not been overruled by this Court sitting *en banc* or by the Supreme Court.  Therefore, we are bound by its interpretation of Starrs.

Id. at 536, 759 S.E.2d at 34 (quoting Ex parte United States, 242 U.S. 27, 46 (1916)).  The Court pointed out that the request was "nothing more than a guilty defendant's attempt to escape (or delay) an inevitable conviction through judicial clemency."  Id.

Here, the trial court had not yet entered a written conviction order.  Undoubtedly then, it had inherent authority to defer disposition and continue the case even after it accepted White's guilty plea on the record.  However, based on Harris's interpretation of Starrs, that inherent authority is limited to continuing the case in order to take evidence to determine the guilt or innocence of the accused or the degree of guilt.  The inherent authority of a trial court cannot be used as a type of judicial clemency to acquit the accused of a crime proved beyond a reasonable doubt and convict the accused of a lesser crime.  See Taylor, 58 Va. App. at 449, 710 S.E.2d at 521.

Just as the accused in Taylor asked the trial court to convict her of a misdemeanor instead of a felony, White admitted guilt and asked the court for a degree of judicial clemency:  an outcome other than a felony conviction.  There is no indication in the record that the trial court was in doubt of White's guilt.  Instead the trial court referred to Taylor and its holding that a trial court could not simply acquit an accused where the evidence proved the offense beyond a reasonable doubt.  In acknowledging Starrs, the trial court made clear it was aware of its authority to take a case under advisement and continue it to a future date.  See Coley v. Commonwealth, 55 Va. App. 624, 634, 688 S.E.2d 288, 293 (2010) ("[T]he 'judge is presumed to know the law and apply it correctly in each case.'" (quoting Groves v. Commonwealth, 50 Va. App. 57, 61-62, 646 S.E.2d 28, 30 (2007))).

The language in Starrs must be interpreted in light of Harris.  Thus, if the trial court had doubts as to White's guilt, it had the option of deferring disposition and taking more evidence in order to determine guilt or innocence or degree of guilt.  However, where the evidence proved

- 13 -

guilt beyond reasonable doubt, the trial court did not have inherent authority to acquit or to convict White of a lesser offense.

White pleaded guilty to the offense, and his counsel admitted that he had told White that the crime was committed when he checked no on the form. White's counsel did not argue that White was innocent of the offense charged, rather he argued that the trial court should not "tag this 60-year-old man . . . with a felony at this point in his life." The trial court was not permitted to acquit a defendant simply because it "believes certain guilty offenders undeserving of a criminal conviction." See Taylor, 58 Va. App. at 442, 710 S.E.2d at 521. The request by White's counsel was "nothing more than a guilty defendant's attempt to escape . . . an inevitable conviction through judicial clemency." See Harris, 63 Va. App. at 536, 759 S.E.2d at 34.

CONCLUSION

To say that the law on this issue is unclear is an understatement. The only thing that is clear is that a trial court may take a case under advisement until a written conviction order is entered. However, that inherent authority "is neither a gateway nor a loophole for acquitting or refusing to convict a defendant whose guilt has been established beyond a reasonable doubt." Id. at 537, 759 S.E.2d at 35. Without some other source of authority, the trial court cannot use its inherent authority as a source of judicial clemency or as a pardon power. Since the trial court found the evidence proved the crime beyond a reasonable doubt, it was correct in holding that it did not have the authority to acquit White and convict him of some other crime.

Affirmed.

Humphreys, J., concurring.

I join entirely in the analysis and judgment of my colleagues in affirming the judgment of the circuit court in this case and write separately only to express my view that our Supreme Court's opinion in Starrs v. Commonwealth, 287 Va. 1, 752 S.E.2d 812 (2014), has been interpreted by some circuit judges and many practitioners more broadly than that Court likely intended.

It is axiomatic that the primary mission of the courts of the Commonwealth is to render judgments *according to law*. The substantive law dictating what those judgments ought to be, assuming the appropriate burden of proof has been met, comes from *only* five sources: the Constitution of the United States, the Constitution of the Commonwealth of Virginia, the statutes adopted by the Congress of the United States and applicable to the Commonwealth under the Supremacy Clause of Article VI, Section 2 of the Constitution of the United States, the statutes adopted by the General Assembly of Virginia, and the common law.

"Adopted over a decade before [the similar provision found in] the United States Constitution, the 1776 Virginia Declaration of Rights provided that 'the legislative and executive powers of the State should be separate and distinct from the judiciary.'" Taylor v. Commonwealth, 58 Va. App. 435, 439, 710 S.E.2d 518, 520 (2011) (quoting Va. Decl. of Rights § 5 (1776); see also Va. Const. ¶ 2 (1776)). "Th[at] original principle"—though suffering erosion in other jurisdictions—endures in the Commonwealth, "ensuring that the legislative, executive, and judicial branches of government 'shall be separate and distinct' and that no one branch could 'exercise the powers properly belonging to the others.'" Taylor, 58 Va. App. at 439, 710 S.E.2d at 520 (quoting Va. Const. art. III § 1 (1971)).[8]

---

[8] Although the concept of separation of governmental powers originated in Virginia's post-colonial government and first appears as § 5 of the Virginia Declaration of Rights of 1776,

> The separate and independent status of the judiciary in the Commonwealth's tripartite system of government implies certain inherent powers "incident to the exercise of judicial power" vested in the courts. 2 A. E. Dick Howard, Commentaries on the Constitution of Virginia 718-20 (1974) (citation omitted). Such powers include, for example, the "authority to discipline attorneys," In re Moseley, 273 Va. 688, 697, 643 S.E.2d 190, 195 (2007), the power of summary contempt, Robinson v. Commonwealth, 41 Va. App. 137, 145, 583 S.E.2d 60, 64 (2003), and the power to continue a case for a lawful disposition at a later date, Hernandez v. Commonwealth, 281 Va. 222, 226, 707 S.E.2d 273, 275 (2011); Moreau v. Fuller, 276 Va. 127, 137, 661 S.E.2d 841, 846-47 (2008).

Taylor, 58 Va. App. at 439-40, 710 S.E.2d at 520.

In Starrs, 287 Va. at 13, 752 S.E.2d at 819 (emphasis added), the Supreme Court of Virginia concluded that a "circuit court, upon accepting and entering [a defendant's] guilty plea[] in a written order, still retained the inherent authority to withhold a finding of guilt, to defer the disposition, *and to consider an outcome other than a felony conviction*." Many, including White, have concluded from the emphasized language that circuit courts have the "inherent authority" to ignore the law when they do so. I do not read Starrs so broadly.

As stated, courts have a duty to render judgments consistent with the rule of law and the evidence presented. That duty cannot always be enforced in an appellate court but it nevertheless endures. Juries can render verdicts that seem inconsistent with the weight of the evidence and courts are generally not permitted to second guess such a verdict. See, e.g., Reed v. Commonwealth, 239 Va. 594, 391 S.E.2d 75 (1990) (upholding "inconsistent" verdict where the jury found the defendant not guilty of robbery but guilty of using a firearm in the commission

---

it has continued in every Virginia Constitution since then. See VA. CONST. of 1830 art. I, § 5 & art. II; VA. CONST. of 1851 art. I, § 5 & art. II; VA. CONST. of 1864 art. I, § 5 & art. II; VA. CONST. of 1870 art. I, § 7 & art. II; and VA. CONST. of 1902 §§ 5 & 39. This bedrock principle is so important and fundamental to the governing philosophy of the Commonwealth that it appears *twice* in our current Constitution in both Article I, § 5 and Article III, § 1 of the Virginia Constitution of 1971.

of robbery). Likewise, courts, under the guise of "inherent authority" to do so, sometimes ignore the clear letter of the law and the evidence, often at the joint urging of the parties in a plea agreement. Such is the case when the prosecutor, a part of the executive branch of government, and the defendant collude with part of the judicial branch to circumvent a judgment based upon a policy established by the people's representatives in the legislative branch with which they disagree. Sometimes this is done unilaterally by the trial court over the objection of the prosecutor. In either event, the Commonwealth's appellate courts usually do nothing to rectify the situation and it falls to the voters to reconsider their representation by prosecutors who circumvent the law and to the General Assembly to reevaluate the continuance in office of those judges who do so. However, any failure by the appellate courts of the Commonwealth to take corrective action in these situations is not due to our recognition of any "inherent authority" on the part of a lower court to arbitrarily depart from the rule of law. The opposite is true. Any such failure on our part to do so is entirely due to the fact that the rule of law equally governs our actions and limits our "inherent authority." If a judgment inconsistent with the law and the evidence has not been appealed—either because the parties and the trial court were complicit in ignoring the plain meaning of the law, or because the judgment benefited a criminal defendant and the Commonwealth lacked the constitutional and statutory authority to appeal the trial court's decision no matter how erroneous—there is no authority, "inherent" or otherwise, for either this Court or our Supreme Court to take any corrective action *sua sponte*.

Of course, courts have the clear authority to continue cases for any reasonable length of time, consistent with the speedy trial rights of a defendant, or delay rendering a judgment for a reasonable amount of time for any number of perfectly legitimate reasons. It is also certainly true that a court may properly set aside a verdict or reduce a conviction already rendered to a lesser included offense based upon an error of law or upon the basis of newly discovered

- 17 -

evidence. Each of these examples infers the presumption of regularity on the part of the trial court in doing so and, in the absence of clear evidence to the contrary, appellate courts presume a valid legal basis for the trial court's action. However, the fact that legitimate reasons exist for a continuance or a delay in rendering or altering a judgment does not mean that every reason is legitimate, and our judicial oath to support the constitutions and laws of the United States and the Commonwealth ought to suggest that any reason not supported by the law and the evidence is illegitimate and outside our "inherent" authority as judges.

White stated during oral argument that the language of our Supreme Court in Starrs would allow a circuit court to simply ignore any statute with which the court might have a personal policy objection, including the authority to set aside a jury verdict based solely on a disagreement with the harshness of the penalty required to be imposed by statute as a form of judicial clemency. Like my colleagues, I disagree with White on this point.

Indeed, when an appeal has been properly perfected to an appellate court and where the presumption of regularity has clearly been rebutted, I find no support in the language of Starrs that there is inherent authority or discretion to simply ignore the rule of law.

> While a guilty plea is "a self-supplied conviction," Kibert [v. Commonwealth], 216 Va. [660,] 664, 222 S.E.2d [790,] 793 [(1976)] (internal quotation marks omitted), it is only when a trial court has entered "a written order finding the defendant guilty," Hernandez, 281 Va. at 226, 707 S.E.2d at 275, that it has made a "determination of the rights of the parties upon [a] matter[] submitted to it in a proceeding." In re Commonwealth's Attorney [for the City of Roanoke], 265 Va. [313,] 319, 576 S.E.2d [458,] 462 [(2003)]. Until the court enters such an order, it "has the inherent authority to take the matter under advisement or to continue the case for disposition at a later date." Hernandez, 281 Va. at 226, 707 S.E.2d at 275. Once a trial court enters a formal adjudication of guilt, it must impose the punishment prescribed by the legislature; it has no inherent authority to depart from that range of punishment. Id. at 225, 707 S.E.2d at 275; see also Moreau, 276 Va. at 136, 661 S.E.2d at 846 ("[T]he judiciary may not assume the function of statutory enactment, a power unique to the legislative function."); In re Commonwealth of Virginia, 229

Va. 159, 163, 326 S.E.2d 695, 698 (1985) (issuing writ of mandamus to compel a trial court to impose a mandatory sentence because the court had no authority to refuse to do so).

Starrs, 287 Va. at 12-13, 752 S.E.2d at 819.

As we noted in Taylor,

nothing in the separation-of-powers doctrine suggests a court has the inherent power to [arbitrarily] acquit a defendant of a crime that the evidence proved beyond a reasonable doubt she committed. To be sure, just the opposite is true. The assertion of a power to acquit the guilty rests upon the fallacy "that the power to enforce begets inherently a discretion to permanently refuse to do so."

58 Va. App. at 440, 710 S.E.2d at 520 (quoting Ex parte United States, 242 U.S. 27, 42 (1916)).

Since White knowingly and voluntarily pleaded guilty, declined to withdraw his guilty plea or provide any legal or factual reason to set it aside, and further because the interpretation of the language in Starrs urged on this Court by White in this case would very clearly violate the separation of powers doctrine found in Article III, § 1 of the Constitution of Virginia, I join my colleagues in concluding that the inherent authority of the circuit court does not include the discretion to simply ignore the rule of law and set aside a guilty plea, voluntarily entered into and not withdrawn, and enter a judgment of acquittal when the record reflects no evidentiary or legal reason to do so.