COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and AtLee
Argued at Fredericksburg, Virginia


RANDOM PINECONE, LLC, ET AL.
                                                          MEMORANDUM OPINION* BY
v.        Record No. 0428-23-4                            JUDGE RICHARD Y. ATLEE, JR.
                                                                    JULY 16, 2024
DAVID DAVIES, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

Christopher Chipman (Compton & Duling, L.C., on brief), for
appellants.

Seth James B. Obed (Obed Law, PLLC, on brief), for appellees.


This appeal involves a landlord-tenant dispute.  Appellants Random Pinecone and Kelly

Byrne (collectively the "Landlord") appeal the decision of the circuit court, which found in favor of

appellees David and Heather Davies (collectively the "Tenants") on their tenant assertion and

breach of lease regarding habitability claims.  On appeal, the Landlord argues that the circuit court

erred: (1) when it found the Uniform Statewide Building Code ("USBC") "requires abandoned inlet

openings to be masonry sealed," (2) when it held that an abandoned chimney flue "constituted a

serious threat to the life, health, or safety" of the Tenants under Code § 55.1-1244(A), (3) by finding

that the Landlord failed to remedy the condition within a reasonable time period, (4) by finding that

the Tenants did not cause the condition, and (4) when it awarded attorneys fees to the Tenants.  For

the following reasons, we disagree and affirm the decision of the circuit court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the prevailing party at trial." *Norfolk S. Ry. Co. v. Sumner*, 297 Va. 35, 37 (2019).

A. *The Tenant Dispute*

On April 3, 2019, the Tenants entered into a lease with Kelly Byrne to rent one-half of a duplex residence in Fairfax County from May 11, 2019, through May 10, 2020.[1] On the evening of September 30, 2019, Heather used the stove to cook dinner. Approximately one hour after turning off the stove, she heard a loud alarm going off in the basement. After some investigation, she discovered that the alarm was a carbon monoxide ("CO") detector. By this time, she had a headache and felt nauseous. She evacuated the home and called the fire department.

The Fairfax County Fire Department sent two units. The firefighters entered the residence and shortly thereafter exited the home to put on air packs. Firefighters detected CO levels of 133 ppm.[2] The firefighters used fans to ventilate both the residence and the adjoining half of the duplex,[3] after which they confirmed that the CO had dissipated. The firefighters attempted to recreate the issue, but they were unable to do so. They ultimately identified the stove as the source of the CO, and they disconnected the gas line to the stove.

---

[1] Kelly Byrne subsequently transferred her interest in the residence to Random Pinecone LLC.

[2] Fairfax County Fire and Rescue Master Technician John Wehr testified that the fire department's alarms go off at 10 ppm. They are required to wear a self-contained breathing apparatus at 33 ppm, and exposure to 100-200 ppm can cause headaches and shortness of breath.

[3] Heather testified that the firefighters detected CO in all levels of her residence and the attic of the adjoining residence.

Byrne initially decided to replace the gas stove with an electric stove, and she had one delivered on October 7, 2019. The electric stove could not be installed, however, because it required an upgraded electrical circuit. Byrne returned the electric stove, and she decided not to replace the stove.

On October 7, 2019, Rodney Fletcher, an HVAC mechanic with Kramer & Sons, conducted a routine inspection of the furnace. During his inspection, he observed an abandoned chimney crock that did not have a cap on it. A chimney crock is an opening in the chimney where an appliance would vent into. In this case, the chimney crock was abandoned when the furnace was replaced with one that did not require venting. Fletcher capped the chimney crock with a foil cap. He also performed a CO test near the furnace, and he did not detect any CO.

Heather later took photos of the chimney crock. At trial, she testified that she "temporarily removed" the foil cap to take a photo. "And then after [she] took the photo, [she] then inserted it back." She explained that the photo demonstrated that the "vents [were] not sealed."

On October 15, 2019, Roy Vance, an appliance repair technician for All American Appliance, inspected the gas stove. He did not detect any visible smoke, and he determined that the stove was working within the manufacturer specifications. Vance did not test for carbon monoxide. Byrne informed the tenants that the next step was to call Washington Gas to turn the gas to the stove back on.

As of October 25, 2019, the Tenants were unwilling to reconnect the gas stove.[4] They emailed Byrne asking for more information about what the technician found about the condition of the stove. They also wanted to know what repairs and cleaning he performed so that they

---

[4] Heather testified that the Tenants never used the stove again after the September 30, 2019 incident.

could be sure it was safe to reconnect the stove. The tenants also mentioned that the technician from Kramer & Sons had installed a cap on the chimney crock, and they asked for an inspection of the chimney flue. Additionally, they asked for the reports from the furnace inspection, the stove service, and the eventual flue inspection. The Tenants reiterated these concerns in an October 28, 2019 email.

Byrne responded on October 31, 2019. She provided the reports from both the furnace and stove inspections. She disagreed with the Tenants' portrayal of the situation. She told them that the home was habitable because the CO detectors were not being triggered. As far as the abandoned crock, she said that she "will defer to the experts" who have said "the problem is fixed."

Relations between the parties deteriorated.[5] Both parties retained counsel, and they continued to communicate through counsel.

On November 7, Heather contacted Fairfax County to find out if permits had been obtained for the water heater or furnace at the property, and she learned that there were no permits. On November 12, she filed a formal complaint with the County. Based on that complaint, and his own inspection of the property, Al Sanchez, a building inspector with Fairfax County, issued a corrective work order dated November 19, 2019.[6] That same day, Sanchez

---

[5] Byrne sent the Tenants notice alleging lease violations due to unapproved pets causing odor issues and other damages. On November 2, 2019, she also delivered a "pay or quit notice," alleging that the Tenants had not paid rent on November 1, 2019. The rent was due on the first of each month, and late fee would be imposed "for every day the rent is late after the 5th Day rent is due." The tenants paid the rent on November 4, 2019. Byrne accepted the rent, but she sent a written "Notice of Accepting Rent with Reservation." The tenants continued to raise other issues.

[6] The corrective work order raised the following violations:

> 1) the finished basement currently configured as a bedroom was adjacent to the mechanical room which was separated by a wooden louvered door rather than an airtight door; 2) the gas furnace

issued a notice of violation based on the Virginia Maintenance Code.[7]  Among other issues, both documents noted that the abandoned masonry vent was not adequately sealed and required the Landlord to correct the issue within 30 calendar days.  The Tenants' counsel sent a copy of both documents to the Landlord's counsel.

Byrne hired Taft Denton to correct the issues in the corrective work order and notice of violation.  He applied for the necessary permits on December 5, 2019, and construction began on December 13, 2019.  On December 17, 2019, Sanchez issued a notice of violation.  At trial, he explained that the notice of violation was issued because the problems listed in the corrective work order were not corrected within 30 days.  Among other things, the new notice of violation reiterated that the "masonry connection is not adequately sealed."

On December 27, 2019, an inspector from Fairfax County conducted a final inspection, and he found no issues.  At the Tenants' insistence, however, the County withdrew final approval because the abandoned chimney crock was not sealed.  At trial, Denton acknowledged that he had emailed Byrne on January 6, 2020, that his "guy forgot to seal the chimney."  The property was reinspected on January 13, 2020, and the County then issued final approval.

B.  *The Trial*

On December 27, 2019, the Tenants filed a Tenant's Assertion and Complaint, using Virginia's Form DC-429, in the general district court, alleging that, pursuant to Code § 55.1-1244, the conditions at the property constituted a serious threat to their life, health, and

---

replacement was completed without a permit; 3) the abandoned masonry vent was not adequately sealed; and 4) the gas water heater replacement was completed without a permit.

[7] The notice of violation based on the Virginia Maintenance Code identified the following violations: "1) failure to install a door with an airtight seal between the mechanical room and the bedroom in the basement; and 2) inadequate emergency escape / rescue openings serving the basement bedroom."

safety. The general district court entered judgment in favor of the Tenants, and the Landlord appealed to the circuit court.

In the circuit court, the Tenants filed an amended bill of particulars asserting the following claims against the Landlord: tenant assertion, breach of lease with respect to the habitability of leased premises, fraudulent inducement, breach of lease regarding the number of bedrooms leased, and unjust enrichment. The Tenants nonsuited their fraudulent inducement claim, and the circuit court dismissed the unjust enrichment claim. The Landlord also filed a counterclaim, arguing that the Tenants breached the lease by having additional pets, failing to remedy the damage caused by the pets, and by failing to pay rent. The case proceeded to trial on the tenant assertion and breach of lease claims, as well as the Landlord's counterclaim.

After the close of the Tenants' case-in-chief, the Landlord made a motion to strike. Among other things, the Landlord argued that the court could only consider conditions raised prior to the commencement of the tenant's assertion and the conditions raised by the Tenants had been remedied prior to the filing of the Tenant's Assertion. The circuit court granted the motion in part and limited its consideration to the following issues: (1) "whether the stove was working properly;" (2) "configuration of the finished basement for use as a bedroom;" (3) "prior replacement of gas furnace without a permit which left unsealed the abandoned chimney crock and an improperly placed exhaust outlet;" and (4) "prior replacement of the gas water heater without a permit."

On April 22, 2021, the circuit court issued an opinion letter. On the tenant assertion claim, the circuit court concluded that the abandoned chimney crock constituted a serious threat to the life, health, or safety of the Tenants. It found that the Landlord was notified of the condition on October 25 and October 28, 2019, via email; in the November 19, 2019 corrective work order; and the December 17, 2019 notice of violation. Despite this, the Landlord did not

- 6 -

remedy the condition until January 6, 2020.  Given the serious risk, the circuit court found that delay was unreasonable.  However, the circuit court rejected the remainder of the Tenants' alleged conditions.  The circuit court awarded the Tenants $7,687.01 in damages.  The circuit court also found in the Tenants' favor on the breach of lease with respect to the habitability of the property and on the Landlord's counterclaim.  It found in the Landlord's favor on the breach of lease based on the number of bedrooms.

C.  *Attorney Fees*

The parties had agreed to bifurcate the issue of attorney fees.  On May 28, 2021, the Landlord filed a motion to strike the Tenants' attorney-fee claim, arguing that the Tenants failed to identify the basis for their claim as required by Rule 3:25 and therefore, the claim was waived.  The Tenants opposed the motion, arguing that they brought a Tenant's Assertion under the Virginia Residential Landlord Tenant Act, specifically Code § 55.1-1244, thereby satisfying the demand and basis requirement under Rule 3:25.  Alternatively, the Tenants sought leave to amend the pleading under Rule 1:8 to include the basis.  The circuit court denied the motion to strike the claim for fees.

On June 21, 2021, the circuit court issued a letter opinion awarding the Tenants attorney fees.  It noted, however, that the tenants "are not entitled to an award of fees on matters unrelated to their tenant's assertion claim or in their successful defense of the counterclaims."  The Tenants had alleged four defects in their tenant assertion claim, and the circuit court found that the Tenants had prevailed on only one of the defects (the abandoned chimney crock).  After reviewing the attorney fees affidavit, the circuit court awarded the Tenants $18,000 in attorney fees, which included $5,000 for attorney fees in the general district court.  The circuit court entered an order July 9, 2021, reflecting its prior rulings.

The Landlord now appeals.

- 7 -

## II. ANALYSIS

A. *The Landlord did not preserve its argument relating to the USBC.*

The Landlord argues that the circuit court erred "when it held that the Uniform Statewide Building Code requires abandoned inlet openings to be masonry sealed." We need not address this argument because the record does not show that the circuit court made this ruling. *See Duva v. Duva*, 55 Va. App. 286, 299 (2009) ("Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal.").

The Landlord's allegation that the circuit court erred by making this ruling does not relate to any ruling that the court made. In its motion to reconsider, the Landlord acknowledged that "the April 22, 2021 Opinion Letter does not specifically state why the abandoned chimney flue was determined to be improperly sealed," though it contends the circuit court "appeared to agree" with the Tenants' argument that abandoned chimney flues must be masonry sealed. While the circuit court did conclude that the unsealed chimney flue was a serious risk to the life, health, or safety of the occupants of the premises, there is nothing in the letter opinion, or the rest of the record, that indicates the circuit court based this holding on the requirements of the USBC. Nor did the circuit court rule on the motion to reconsider. "So, there is no 'ruling' for this Court to 'consider[] as a basis for reversal.'" *Brown v. Commonwealth*, 74 Va. App. 721, 738 (2022) (alteration in original) (quoting Rule 5A:18). Therefore, we do not consider this argument.

B. *The circuit court did not err in entering judgment in the Tenants' favor on the tenant assertion claim.*

We review "questions of law de novo, including those situations where there is a mixed question of law and fact." *Taylor v. Northam*, 300 Va. 230, 250-51 (2021) (quoting *Napper v. ABM Janitorial Servs.-Mid Atl., Inc.*, 284 Va. 55, 61 (2012)). "For those issues that present mixed questions of law and fact, we give deference to the trial court's findings of fact and view the

facts in the light most favorable to the prevailing party, but we review the trial court's application of the law to those facts *de novo*." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006).

1. The abandoned chimney flue constituted a serious threat to the life, health, or safety of the occupants under Code § 55.1-1244(A).

Under Code § 55.1-1244(A), a "tenant may assert that there exists upon the leased premises a condition that . . . , if not promptly corrected, will constitute a fire hazard or serious threat to the life, health, or safety of occupants of the premises."

The Landlord notes that the circuit court concluded that the stove was not the source of the elevated CO. It argues that there is no evidence indicating another source of CO, including from the abandoned chimney crock. Thus, it contends that there is no evidence in the record to support the circuit court's conclusion that the chimney crock was a serious threat to the life, health, or safety of the Tenants. We disagree.

The evidence reflects that a chimney crock is an opening in the chimney into which an appliance would vent. Part of the reason a permit was required to upgrade the furnace to a high efficiency furnace was to make sure the old vent gets sealed. The circuit court did not find that the abandoned chimney crock itself was the *source* of the CO, but rather it was an unsealed opening that would allow CO passing through the flue to escape its intended path and leak into the property. The evidence supports the circuit court's conclusion that the abandoned chimney crock was a serious threat to the life, health, or safety of the Tenants.

The circuit court noted that the evidence indicated that the adjoining units shared a chimney and that the CO from the September 30 incident infiltrated the other unit. The fire department had to vent both sides of the residence. Thus, the circuit court reasonably inferred that the CO had leaked through the hole in the shared chimney. Additionally, in an email from

Seth Kramer of Kramer & Sons to Byrne, he informed her a chimney flue inspection was a good idea because both the water heater and the furnace vent through the chimney "and do produce CO when they burn." And in an email to the Tenants, the Landlord acknowledged that Kramer & Sons had identified the crock in the chimney as a problem. Although Fletcher placed a foil cap on the crock, the circuit court found that this was not sufficient because it could be easily removed; if it can be easily removed, then it is not sealed. Thus, there is evidence in the record that the abandoned chimney crock posed a risk for CO leaking into the residence. In light of this evidence, and the fact that the source of the September 30 CO leak appeared to remain unknown, we cannot say that the circuit court erred in concluding that the abandoned chimney crock posed a serious threat to the life, health or safety to the Tenants.

2. The Landlord did not repair the condition within a reasonable time under Code § 55.1-1244(B)(1).

To succeed on a tenant's assertion claim, the tenant must show that the landlord "refused or, having a reasonable opportunity to do so, failed to remedy the condition for which he was served a written notice of the condition by the tenant or was notified of such condition by a violation . . . notice from an appropriate state or local agency." Code § 55.1-1244(B)(1). The statute provides that "what period of time shall be deemed to be unreasonable delay is left to the discretion of the court." *Id.* There is, however, "a rebuttable presumption that a period in excess of 30 days from receipt of the notification by the landlord is unreasonable." *Id.* This means that once the Tenants have proved that the delay exceeded 30 days from the day the Landlord received notice, the factfinder can infer that the delay was unreasonable. But "[a] rebuttable presumption 'may be overcome by the introduction of contrary evidence.'" *Wright v. Wright*, 61 Va. App. 432, 448 (2013) (quoting *Rebuttable presumption*, *Black's Law Dictionary* (7th ed. 1999)).

The record on appeal does not contain evidence that rebuts the statutory presumption in Code § 55.1-1244(B)(1). The circuit court concluded that the Landlord was notified of this issue

- 10 -

via email as early as October 25, 2019, and it was not resolved until January 6, 2020. This period well exceeds 30 days. Even if, as Landlord argues, the October 25 and 28 emails were just an "express[ion] of general concern," the circuit court found that the Landlord had notice on November 19, 2019, via the corrective work order, and the delay from that date still exceeds the statutory 30-day period. Thus, by statute, there is a presumption that the delay was unreasonable. There is nothing in the record before us that rebuts this presumption.

To the contrary, the record indicates that the Landlord was (and still is) convinced that the foil cap on the furnace was adequate. Further, the Landlord's contractor acknowledged on January 6, 2020, that his "guy forgot to seal the chimney."[8] In addition to the statutory presumption, the circuit court found that the serious risk presented by the improperly sealed chimney crock rendered the delay in correcting the issue unreasonable. Nothing in the record indicates that the statutory presumption was rebutted or that the circuit court abused its discretion in concluding the delay was unreasonable. Accordingly, the circuit court did not err.

3. The Tenants did not cause the condition that constituted the serious threat.

Under Code § 55.1-1244(C), it is a "sufficient answer or rejoinder" to a tenant's assertion "if the landlord establishes to the satisfaction of the court that . . . such conditions have been caused by the tenant, his guest or invitee, members of the family of such tenant, or a guest or invitee of such family member." The Landlord argues that the circuit court erred when it held that the Tenants did not cause the condition and that it "utterly failed to address [Heather's] testimony that she removed the cap installed on the abandoned chimney flue."

_____

[8] The Landlord also argues that the issue was remedied before the Tenants filed their tenant's assertion claim on December 27, 2019, because the County issued final approval for the issues in the notice of violation and corrective work order that same day. But the record indicates that the County reopened the issue because the chimney crock had not been sealed and that the issue was not corrected until January 6, 2020.

But this argument misconstrues both Heather's testimony and the circuit court's actions. Heather testified that she "temporarily removed" the cap to take a photo, "[a]nd then after [she] took the photo, [she] inserted it back." Thus, her testimony demonstrates that she immediately replaced the cap after the photo. Additionally, the circuit court did address this testimony. When the Landlord pointed out that Heather had removed the cap, the circuit court responded that the cap was not sealed "if you can just remove the cap." Thus, contrary to the Landlord's claims that the circuit court did not address the testimony, it found that Heather's ability to remove the cap was evidence that it was not properly sealed. Viewing the testimony and the record, the circuit court did not err when it found that the Tenants did not cause the condition.

C. *Attorney fees*

The Landlord argues that the circuit court erred when it awarded the Tenants attorney fees because the Tenants waived their claim for attorney fees when they failed to state a basis for their claim.

"The general rule in this Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Mintbrook Developer, LLC v. Groundscapes, LLC*, 76 Va. App. 279, 290 (2022) (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92 (1999)). Rule 3:25(b) provides that

> [a] party seeking to recover attorney fees must include a demand therefor in the complaint filed pursuant to Rule 3:2, in a counterclaim filed pursuant to Rule 3:9, in a cross-claim filed pursuant to Rule 3:10, in a third-party pleading filed pursuant to Rule 3:13, or in a responsive pleading filed pursuant to Rule 3:8. The demand must identify the basis upon which the party relies in requesting attorney fees.

If a party fails to include the required demand, it "constitutes a waiver by the party of the claim for attorney fees," unless leave to amend is granted under Rule 1:8. Rule 3:25(c).

The Landlord argues that the Tenants waived their claim for attorney fees because they did not state a basis for their claim in the Tenant's Assertion and Complaint, the original bill of particulars, or the amended bill of particulars. The Tenants insist that they adequately stated the basis of the claim because they used Virginia's tenant's assertion "Form DC-429." They contend that a tenant's assertion claim includes relief for attorney fees, and the form itself specifically lists Code § 55.1-1244, the statute that is the basis for the fees, at the top of the form. They contend that the original bill of particulars and the amended bill of particulars amplified the original filing.

We need not determine whether the Tenants adequately stated a basis for their claim, however, because we find that the outcome here is controlled by this Court's opinion in *Mintbrook Developers, LLC v. Groundscapes, LLC*. In *Mintbrook*, the trial court held that the appellant had waived its attorney-fee claim under Rule 3:25. 76 Va. App. at 291. On appeal, the appellant argued that its pleading adequately pled the basis of the claim. *Id.* at 292. During oral arguments on appeal, appellee's counsel candidly acknowledged that he knew the basis for the attorney fees "from the beginning." *Id.* at 293. Relying on *Online Resources Corporation v. Lawlor*, 285 Va. 40 (2013), this Court held that appellee's concession that it knew the basis of the fee claim "ma[de] it unnecessary to decide" whether the pleading, "standing alone, adequately pleaded that claim." *Mintbrook*, 76 Va. App. at 293-94. Because the appellant admitted it "knew the legal basis for the fee claim," this Court reversed the trial court's decision to deny attorney fees. *Id.* at 294.

In *Lawlor*, the Supreme Court considered a similar argument—that the complaint "failed to specifically state the basis" for attorney fees. *Lawlor*, 285 Va. at 62. In that case, the appellant argued that the trial court erred by permitting the appellee to amend the complaint to include the basis of the attorney-fee claim. *Id.* On appeal, however, the appellant conceded in

its opening brief that it knew during the litigation the basis for the attorney-fee claim. *Id.* The Supreme Court found the concession dispositive because it "reveal[ed] that an amendment on this issue was unnecessary."[9] *Id.*

Here, as in *Mintbrook* and *Lawlor*, the Landlord admitted that it knew the legal basis for the attorney-fee claim. During oral argument before this Court, the Landlord acknowledged that it knew the basis of the claim, but it argued that the Tenants did not properly plead the basis of the claim.[10] Thus, *Mintbrook* controls the outcome in this case. *See White v. Commonwealth*, 67 Va. App. 599, 612 n.7 (2017) ("A holding by one panel of the Court of Appeals of Virginia 'bind[s] all other three-judge panels under the interpanel accord doctrine.'" (alteration in original) (quoting *Startin v. Commonwealth*, 56 Va. App. 26, 39 n.3 (2010) (en banc))). Therefore, as this Court did in *Mintbrook*, we find the Landlord's concession that it knew the basis of for the Tenants' attorney-fee claim makes it unnecessary to decide whether the Tenants' pleadings adequately pled the basis for that claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

*Affirmed.*

---

[9] The Landlord argues that the Tenants expanded their claims in the circuit court beyond the tenant's assertion claim. In *Lawlor*, the appellant argued that it was unaware that the appellee was seeking attorney fees for the entire case, not just the one claim of which it was aware. *Lawlor*, 285 Va. at 62. The Court found appellee, though entitled to attorney fees on the one claim, was not entitled to "expanded recovery of legal fees." *Id.* Likewise, here, the circuit court did not award attorney fees for "matters unrelated to their tenant's assertion claim."

[10] Furthermore, both in the general district court and during discovery, the Landlord received documents specifically indicating that the attorney fees claim was based on Code § 55.1-1244.